UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| OROS & BUSCH APPLICATION TECHNOLOGIES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) Case No. 4:12CV00959 ERW |
| TERRA RENEWAL SERVICES, INC., | ) ) ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Terra Renewal Services, Inc.'s ("Terra") Motion to Dismiss [ECF No. 109].

**I.   BACKGROUND**

Plaintiff Oros & Busch Application Technologies, Inc. ("Oros & Busch") filed a Complaint against individuals Charles Golden and Gabriel Timby, on May 25, 2012, bringing claims for breach of contract; civil conspiracy; violation of the Missouri Computer Tampering Act, Mo. Rev. Stat. §§ 569.096 and 537.525; and conversion [ECF No. 1]. Oros & Busch and the two individual defendants, Golden and Timby, participated in Alternative Dispute Resolution, and, on July 17, 2013, the Designated Neutral reported Oros & Busch and the two individual defendants achieved settlement, subject to the Court ordering a Consent Permanent Injunction, and execution of a Final Settlement Agreement [ECF No. 89]. On August 1, 2013, the Court entered the Consent Permanent Injunction, granted the parties' Joint Stipulation of Dismissal without Prejudice, and granted Oros & Busch leave to file an Amended Complaint, bringing claims against Terra.

Oros & Busch filed its Amended Complaint, naming Terra as the sole defendant, on August 2, 2013 [ECF No. 94]. In its Amended Complaint, Oros & Busch asserted two claims against Terra: Count I, Tortious Interference with Contract (APA); and Count II, Civil Conspiracy. The Complaint alleges as follows.

Oros & Busch and Terra both perform non-hazardous environmental clean-up and apply recycled waste as fertilizer on agricultural land. Golden and Timby worked for Terra for several years, before leaving Terra to start their own business, Clear Creek Environmental, Inc. ("Clear Creek"). Clear Creek, like Oros & Busch and Terra, was in the business of non-hazardous environmental clean-up and application of recycled waste as fertilizer on agricultural land.

Golden and Timby operated Clear Creek for just over one year. Because Clear Creek was failing and had significant debt, Golden and Timby began looking for a way out of the business. In September 2010, they talked with Oros & Busch and Terra separately, about one of the companies possibly acquiring Clear Creek. At the time, Clear Creek owed lenders approximately $399,000. This amount included two outstanding loans, one or both of which Golden and Timby personally guaranteed.

Golden and Timby promised Oros & Busch that, if Oros & Busch acquired Clear Creek, they would help Oros & Busch capitalize on their existing customer relationships and goodwill, including securing specific major customers with whom Oros & Busch had never successfully conducted business. Although Clear Creek was not itself a viable entity, Oros & Busch was interested in Golden's and Timby's customer relationships in the southwestern Missouri and northern Arkansas region. These relationships motivated Oros & Busch to acquire the assets of Clear Creek, and to rescue Golden and Timby from the $399,000 debt. To achieve its aim, Oros & Busch entered into an Asset Purchase Agreement (the "APA"), whereby Oros & Busch

acquired all of Clear Creek's assets, with Golden, Timby, and an individual named Jason Ramsey on January 6, 2011. In consideration for the purchase of Clear Creek's assets and the assumption of Clear Creek's debt, Golden and Timby promised in the APA not to compete against Oros & Busch for ten (10) years [ECF Nos. 94, 96]. Since it acquired Clear Creek, Oros & Busch has been paying approximately $6,000 per month in principal and interest on the balance of the two Clear Creek loans. Oros & Busch has paid one of Clear Creek's two outstanding loans in full. In addition to the non-compete obligations, Golden and Timby agreed to a confidentiality agreement in the APA, in which they agreed to keep confidential "all information about Buyer" obtained as a result of the APA's terms [ECF No. 96 at 20].

Oros & Busch's primary purpose for acquiring Clear Creek, and assuming the debt, was to hire Golden and Timby, thereby capitalizing on their goodwill and customer relationships. Specifically, Oros & Busch hoped to compete with Terra, Oros & Busch's largest competitor, for business in the southwestern Arkansas and northern Arkansas region. Oros & Busch had never successfully secured business in that region. Golden and Timby's existing customer relationships in that region made them particularly well-suited to assist Oros & Busch in this endeavor. Accordingly, Oros & Busch employed Golden and Timby as its "point-persons" in southwestern Missouri and Arkansas. Golden served as regional general manager, and Timby served as regional environmental compliance manager.

To support Golden's and Timby's efforts to develop new business, Oros & Busch invested approximately $1,000,000 (taking into account the debt acquired from Clear Creek) in the region, and acquired certain equipment purchased specifically for Golden's and Timby's operations that gave Oros & Busch a competitive advantage over its competitors in the region, especially Terra. This unique equipment was not know to Terra, or Oros & Busch's other

3

competitors in the industry.  Golden and Timby gained knowledge of this equipment, and its source, while employed by Oros & Busch.

As promised, Golden and Timby utilized their customer relationships to help Oros & Busch successfully secure new business in southwestern Missouri, northern Arkansas, Kentucky, and Tennessee regions for the first time, including new customers secured solely through Golden's and Timby's prior customer relationships.  In 2012, these new customers accounted for over 42% of Oros & Busch's annual revenue.  All of these new customers are, or were, Terra's customers.  Upon information and belief, no other company had ever successfully competed against Terra for this business.  Upon information and belief, Oros & Busch bids against Terra for much or all of the business from these customers.

As a result of the acquisition of Clear Creek's assets, including Golden's and Timby's customer relationships and goodwill, Oros & Busch posed a significant economic threat to Terra. Through Oros & Busch's, Golden's, and Timby's combined efforts, Oros & Busch was establishing itself as a viable competitor in the southwestern Missouri and northern Arkansas region.

However, on April 23, 2012, Oros & Busch received identical letters from Golden and Timby, informing it the two men were voluntarily resigning their employment and terminating their employment agreements.  On April 25, 2012, Oros & Busch learned that Golden and Timby were going back to work for Terra, Oros & Busch's largest competitor.  Golden and Timby resigned from Oros & Busch with the express purpose of aiding Terra in competing unfairly against Oros & Busch, in exchange for substantially more compensation than they previously received from Terra, Oros & Busch, or Clear Creek.  In fact, Terra solicited Golden and Timby for employment, and offered them substantial pay increases while Golden and Timby were

4

employed by Oros & Busch, and were subject to covenants not to compete under the APA,  Terra was aware of the non-compete obligations at that time.  Terra solicited Golden and Timby for the express purposes of unfairly competing to gain back the customers it had lost to Oros & Busch, and eliminating Oros & Busch's ability to pose a significant competitive threat in the future.

In September 2010, Terra offered to purchase Clear Creek, and to employ Golden and Timby at salaries similar to what they ultimately received from Oros & Busch.  However, Golden's and Timby's newly-acquired ability to help Terra compete unfairly against Oros & Busch made Golden and Timby substantially more valuable to Terra, resulting in substantial pay increases to Golden and Timby in their current jobs with Terra.  At all times, Terra was aware of Golden's and Timby's contractual promises not to compete against Oros & Busch, yet, in utter disregard of these contractual promises,  Terra solicited Golden and Timby, and undertook negotiations for them to become employed by Terra while Golden and Timby were still employed at Oros & Busch.

## I.    LEGAL STANDARD

A party may move under Rule 12(b)(6) to dismiss a complaint for "fail[ing] to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).  The purpose of a motion to dismiss is to test "the sufficiency of a complaint[.]" *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Ordinarily, only the facts alleged in

the complaint are considered for purposes of a motion to dismiss; however, materials attached to the complaint may also be considered in construing its sufficiency. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff[.]" *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). However, if a claim fails to allege one of the elements necessary to recovery on a legal theory, that claim must be dismissed for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). "Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Although courts must accept all factual allegations as true, they are not bound to take as true "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 677-78.

## II. DISCUSSION

The APA between Oros & Busch, Golden, and Timby was heavily negotiated and contained restrictive covenants. When used in the APA, the term "Sellers" refers to Golden, Timby and Ramsey; "Company" refers to Clear Creek; and "Buyer" refers to Oros & Busch [ECF No. 96 at 1]. Missouri law governs the APA [ECF No. 96 at 18].

In its Motion to Dismiss, Terra contends Oros & Busch has not asserted any legally cognizable claims against Terra, and asserts the following three reasons as grounds for dismissal: 1) Oros & Busch's restrictive covenants with Golden and Timby are overly broad and invalid under Missouri law; 2) a civil conspiracy is not itself actionable in the absence of an underlying

6

wrongful act or tort; and 3) Oros & Busch fails to adequately allege any wrongful acts by Terra [ECF Nos. 109, 110].

In its Memorandum in Opposition, Oros & Busch argues Terra's motion should be denied, because the enforceability of a non-compete agreement requires factual analysis not appropriate for a motion to dismiss, and the Amended Complaint, viewed as a whole, sufficiently states claims for tortious interference and civil conspiracy [ECF No. 123].  Alternatively, if the Court determines its First Amended Complaint to be somehow facially deficient, Oros and Busch prays for an opportunity to amend its pleading pursuant to Federal Rule of Civil Procedure 15(a)(2), stating that it will plead additional factual detail, including names of specific customers at issue, specific amounts of lost revenue and profit, and details of specific communications between Golden, Timby, Terra, and Oros & Busch customers [ECF No. 123 at 12].

In its Reply, Terra argues Oros & Busch wrongly contends it can sufficiently assert a cause of action for its two claims "based upon some amorphous breach of the APA (as opposed to identifying the specific terms of the APA that were allegedly breached)" [ECF No. 124 at 14]. Terra claims the First Amended Complaint points to only two APA provisions, the non-compete and confidentiality clauses, as the bases for its claims, and Terra again contends the non-compete clause could not be breached because it was invalid, and Oros & Busch cannot sufficiently allege a breach of the confidentiality provision.  Terra further argues Oros & Busch's Response "only highlights that it has failed to sufficiently plead its claims regarding the non-compete clause and confidentiality clause[,]" and it contends Oros & Busch's request to amend the Amended Complaint should be denied, because any amendment would be futile [ECF No. 124 at 12].

### A. Tortious Interference with Contract – The Non- Compete Clause

Under Missouri law, a plaintiff asserting a claim of tortious interference with a contract must show: 1) a contract; 2) defendant's knowledge of the contract; 3) intentional interference by the defendant inducing or causing a breach of the contract; 4) absence of justification; and 5) damages resulting from defendant's conduct. *Rhodes Eng'g Co., Inc. v. Pub. Water Supply Dist. No. 1 of Holt Cnty.*, 128 S.W.3d 550, 564 (Mo. Ct. App. 2004); *Hamilton v. Spencer*, 929 S.W.2d 762, 764 (Mo. Ct. App. 1996).

The APA contains the following non-compete provision:

> 11.14. *Non-Compete*.
> Sellers and the Company each hereby agree that, for a (10) year period beginning on the date of the Closing, that neither the Sellers nor the Company shall, in any geographic area within the United States: (a) Directly or indirectly (through other persons or entities or otherwise) perform services for or assist any other person, firm or corporation engaged in, or own directly or indirectly any interest in, any business which is, directly or indirectly, in competition with the business activities of the Buyer, which activities relate to [describe business] (sic) (the "Business"), or (b) otherwise directly or indirectly compete with the activities of Buyer, which activities relate to the Business.
>
> In the event that any limitation set out in this section is deemed unreasonable by a court of competent jurisdiction, Sellers and the Company agree to submit to the reduction or modification of said limitation as said court shall deem reasonable. Sellers acknowledge that irreparable injury would be sustained by the Buyer in the event of a violation by Sellers of any of the provisions of this § 11.14, and by reason thereof the Buyer shall have the right to seek and obtain injunctive relief without limiting any of its rights to all other available legal and equitable remedies.

[ECF No. 96 at 19]. Terra's primary argument for dismissal of the Complaint's tortious interference with contract claim is that the non-compete provision Oros & Busch is seeking to enforce is not a valid contract, in that the clause contains a ten-year, nationwide covenant, and Golden and Timby worked for Oros & Busch in only four states [ECF Nos. 109, 110, 124]. Terra contends non-compete clauses do not always require factual analyses that preclude

8

resolution at the dismissal stage.  Terra maintains Oros & Busch cannot prove the non-compete provision is valid under any set of facts, and argues the tortious-interference-with-contract and civil-conspiracy claims based on that provision should be dismissed [ECF No. 124].  Terra argues the tortious-interference claim thus fails, because the cause of action cannot be based upon an invalid contract.

"Missouri courts recognize that public policy approves employment contracts containing restrictive covenants because the employer has a proprietary right in its stock of customers and their good will, and if the covenant is otherwise reasonable, the court will protect the asset against appropriation by an employee."  *Schott v. Beussink*, 950 S.W.2d 621, 625 (Mo. Ct. App. 1997).  Temporary and spatially limited restraints on an individual's exercise or pursuit of his occupation are enforceable if reasonable under all attending circumstances, and if enforcement serves the employer's legitimate interests.  *Id.* at 625-26.

In its "Memorandum in Opposition to Defendant's Motion to Dismiss, or in the Alternative, Motion for Leave to Amend Complaint," and its Sur-Reply, Oros & Busch contends the enforceability of the non-compete agreement contained in the APA necessitates a detailed factual analysis that is outside the scope of a Rule 12(b)(6) motion [ECF Nos. 123 at 5, 128]. Oros & Busch asserts Golden's and Timby's non-compete agreements are enforceable, and it argues even a determination that the restrictions at issue are overbroad would not cause the APA to be unenforceable as a matter of law, as Missouri courts have the power to modify non-compete agreements to make them reasonable.  Oros & Busch claims tortious interference with contract is sufficiently pleaded, in that its Complaint alleges Terra solicited Golden and Timby "with the intent to unfairly compete with [Oros & Busch] by misappropriating and diverting [Oros &

9

Busch's] good will and customer relationships, as well as [Oros & Busch's] confidential and proprietary information" [ECF No. 123 at 8].

As an initial matter, the Court finds that the time and spatial limitations contained within the APA, standing alone, do not render the restrictive covenant "ipso facto unenforceable." *See Schott*, 950 S.W.2d at 627, n. 2. Significant to this Court's analysis is the nature of the APA, and the relationship of the parties in the transaction underlying their agreement. The APA was not an employment agreement between an employee and employer, but rather, a purchase agreement between a buyer and a seller for the sale of a business. "Unlike the promisor in an employment contract, the promisor in the sale of a business has a superior bargaining position from which he may negotiate the best price for his covenant not to compete." *Schnucks Twenty-Five, Inc. v. Bettendorf*, 595 S.W.2d 279, 285 (Mo. Ct. App. 1979). "The spatial and time limitations required in covenants not to compete accompanying the sale of a business are designed in part to protect the buyer from the seller's encroachment on the good will transferred in the sale." *Id.* Review of the reasonableness of the restrictions requires a balancing of the conflicting interests of the buyer, the seller, and the public. *Id.* at 286.

In *Schnucks Twenty-Five, Inc.*, Schnucks sought to defend property rights it acquired in its purchase of the assets of Allied Supermarkets, Inc., which had formerly been known as ACF-Wrigley Stores. *Id*. at 282. Schnucks sought damages for, among other things, tortious interference with its contract rights, alleging the defendants, former owners of the Bettendorf grocery business, breached a non-compete covenant contained in a purchase agreement whereby ACF-Wrigley Stores purchased the stock of the Bettendorf grocery business. *Id*. The stock purchase agreement contained a covenant not to compete, which, inter alia, provided that the Bettendorf defendants would not directly or indirectly engage in the wholesale or retail food

business within a radius of 200 miles of St. Louis, Missouri, for a period of ten years after the closing date. *Id.* at 282-83. On appeal, the Bettendorf defendants alleged that the covenant was unenforceable because it was not restricted as to time, reasonable space or proper purpose. *Id*. at 285.

In its analysis, the Missouri Court of Appeals noted the enforceability of covenants not to compete that are ancillary to the sale of a business or employment is determined by a "reasonableness" standard, which requires a balancing of the countervailing interests of the promisor, the promissee, and the public good. *Id.* The non-compete covenant in *Schnucks* was designed to protect "the vulnerable business interest" of the buyer, or covenantee, *Id*. at 286. The Missouri Court of Appeals noted that restrictive covenants found to be reasonable for the covenantee are usually found to be reasonable vis-a-vis the public. *Id.* The court stated, "[T]he claim of hardship on the part of the promisor, he having received the consideration stipulated in the contract for his promise not to compete with the covenantee, will have but little appeal to the court, and there are very few cases in which the question of reasonableness as to the covenantor has been raised at all." *Id.* (internal quotations and citation omitted). The court found the ten-year, 200-mile radius territorial limitation valid, even though the area was much larger than the St. Louis metropolitan area where Bettendorf stores had been located, noting cases had recognized the reasonableness of restrictions that encompassed areas in which the covenantee might be expected to expand its business. *Id.*

Here, Golden and Timby promised not to engage in competing business with Oros & Busch within the United States for ten years. Noncompetition for a period of ten years has been upheld as reasonable by Missouri courts, as have territorial restrictions that limit competition in areas greater than the area where the covenantee has business concerns. *Id.* The inclusion of the

11

temporal and territorial limitations in the APA's covenant not to compete was designed to protect the vulnerable business interest of Oros & Busch, and to protect Oros & Busch from Golden's and Timby's encroachment on the goodwill transferred in the purchase, with an eye to expanding Oros & Busch's territory.  At the time of the sale, Clear Creek was a failing business, with outstanding debt personally guaranteed by Golden and Timby.  Oros & Bush assumed, and agreed to pay, honor, and discharge the liabilities owed by Clear Creek, Golden, and Timby. Golden and Timby received $399,000 for their sale of Clear Creek and accompanying covenants not-to-compete.  They should not be permitted to deprive Oros & Busch "from the fruits of the contract."  For purposes of its ruling on the motion to dismiss, the Court finds that the particular spatial and temporal limitations contained within the APA are not unenforceable.

Liberally construing the complaint in favor of Oros & Busch, and accepting all factual allegations as true, the Court concludes the Complaint sufficiently alleges the elements necessary to recover on a claim for tortious interference with contract.  The Complaint alleges the existence of a contract, the covenant not-to-compete contained within the APA; Terra's awareness of the contract; Terra's inducement of a breach of that contract through its solicitations of Golden and Timby with the intent to unfairly compete with Oros & Busch by misappropriating and diverting Oros & Busch's good will and customer relationships, as well as its confidential and proprietary information; and damages resulting from that inducement.  *See Hamilton*, 929 S.W.2d at 764.

      **B.**      **Tortious Interference with Contract – The Confidentiality Clause**

Although the Court has already determined the Complaint sufficiently alleges a claim for tortious interference with contract in connection with Golden's and Timby's breach of the APA's non-compete clause, the Court also finds the Complaint sufficiently alleges a breach of the APA's confidentiality clause that was induced by Terra.

12

In addition to the non-compete obligations, Golden and Timby agreed to the following confidentiality agreement in the APA:

> 11.15 *Confidentiality*.
> Sellers agree to keep confidential all information about Buyer which it (sic) obtains hereunder, including but not limited to Buyer's data, suppliers, customers, processors, business plans or policies, pricing, costs, methods, strategies, books, records, proprietary information and materials, patents, copyrights, trade or service marks or other intellectual property, and any confidential or secret aspects of the business, or trade secrets of the Buyer or any of its subsidiaries or affiliated companies, all of which are and shall remain the property of Buyer (the "Confidential Information"), and shall not, directly or indirectly, divulge, disclose or furnish the same to anyone except by the consent or request of Buyer.

[ECF No. 96 at 20]. Accepting all factual allegations as true, and liberally construing the Complaint in favor of Oros & Busch, the Court finds the Complaint alleges that Golden and Timby misappropriated Oros & Busch confidential and proprietary information, including pricing information, when the two men resigned from Oros & Busch and went back to work for Terra; and that Terra solicited the men for the express purpose of obtaining this information. The Court will deny Terra's Motion to Dismiss as to the tortious-interference-with-contract claim.

  C. <u>**Civil Conspiracy**</u>

"A civil conspiracy is an agreement between at least two persons to do an unlawful act, or to use unlawful means to do an act which is lawful." *Blaine v. J.E. Jones Constr. Co.*, 841 S.W.2d 703, 713 (Mo. Ct. App. 1992). However, civil conspiracy is not itself actionable; it must be based on an underlying wrongful act or tort. *Hamilton*, 929 S.W.2d at 767. A plaintiff asserting a claim for civil conspiracy needs to show the conspirators had "a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." *Id.* (quoting *Chmieleski v. City Prods. Corp.*, 660 S.W.2d 275, 290 (Mo. Ct. App. 1983).

Terra primarily argues that, because the civil-conspiracy claim is premised on the tortious-interference-with-contract claim, the Complaint's failure to plead sufficiently a claim for

13

tortious interference precludes its civil conspiracy claim.  However, the Court has determined the Complaint sufficiently states a claim for tortious interference with contract; consequently, this argument fails.

Terra also argues the Complaint's allegations "nonetheless fail to satisfy the pleading requirements set forth by the Supreme Court in *Iqbal* and *Twombly*, because its allegations consist of legal conclusions devoid of factual contentions." [ECF No. 110 at 14].  Terra asserts the Complaint "fails to identify a single overt act, or even allege how any of the (unalleged) acts furthered the conspiracy."

Oros & Busch contends its Complaint sufficiently states a claim for civil conspiracy, stating it alleges, and Terra concedes, that Golden, Timby, and Terra conspired to breach the APA.  Oros & Busch argues the Complaint sufficiently states a conspiracy claim because it alleges Terra conspired with the Golden and Timby while they were working for Oros & Busch; and the parties collectively agreed upon a plan for Golden and Timby to resign from Oros & Busch to work for Terra in breach of their promise not to compete against Oros & Busch.  The Court agrees.  The Court finds the Complaint alleges a claim for civil conspiracy sufficiently to withstand a motion to dismiss.  The Court will deny Terra's motion.

### III.  CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [ECF No. 109] is **DENIED.**

Dated this __27th__ day of November, 2013.

*[signature]*

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE