UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| OROS & BUSCH APPLICATION | ) |
| TECHNOLOGIES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:12CV00959 ERW |
| | ) |
| TERRA RENEWAL SERVICES, INC., | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

This matter comes before the Court for a hearing, by Plaintiff's request, on Defendant's Motion for Sanctions for Spoliation of Evidence [ECF No. 129], and Plaintiff's Motion to Strike [ECF No. 152].

I.  **BACKGROUND**

Plaintiff Oros & Busch Application Technologies, Inc. ("Oros & Busch") filed a Complaint against individuals Charles Golden and Gabriel Timby, on May 25, 2012, bringing claims for breach of contract; civil conspiracy; violation of the Missouri Computer Tampering Act, Mo. Rev. Stat. §§ 569.096 and 537.525; and conversion. Oros & Busch and the two individual defendants, Golden and Timby, participated in Alternative Dispute Resolution. Counsel for Terra Renewal Services ("Terra") attended the mediation, but left before the parties reached agreement on settlement terms [ECF No. 150-1]. On July 17, 2013, the Designated Neutral reported Oros & Busch and the two individual defendants achieved settlement, subject to the Court ordering a Consent Permanent Injunction, and execution of a Final Settlement Agreement. On August 1, 2013, the Court entered the Consent Permanent Injunction, granted

the parties' Joint Stipulation of Dismissal without Prejudice, and granted Oros & Busch leave to file an Amended Complaint, bringing claims against Defendant Terra.

Oros & Busch filed its Amended Complaint, naming Terra as the sole defendant, on August 2, 2013. In its Amended Complaint, Oros & Busch asserted two claims against Terra: Count I, Tortious Interference with Contract (APA); and Count II, Civil Conspiracy. On September 27, 2013, Terra filed a Motion to Dismiss, which the Court denied on November 27, 2013. The Amended Complaint alleges as follows.

Oros & Busch and Terra both perform non-hazardous environmental clean-up and apply recycled waste as fertilizer on agricultural land. Golden and Timby worked for Terra for several years, before leaving Terra to start their own business, Clear Creek Environmental, Inc. ("Clear Creek"). Clear Creek, like Oros & Busch and Terra, was in the business of non-hazardous environmental clean-up and application of recycled waste as fertilizer on agricultural land.

Golden and Timby operated Clear Creek for just over one year. Because Clear Creek was failing and had significant debt, Golden and Timby began looking for a way out of the business. In September 2010, they talked with Oros & Busch and Terra separately, about one of the companies possibly acquiring Clear Creek. At the time, Clear Creek owed lenders approximately $399,000. This amount included two outstanding loans, one or both of which Golden and Timby personally guaranteed.

Golden and Timby promised Oros & Busch that, if Oros & Busch acquired Clear Creek, they would help Oros & Busch capitalize on their existing customer relationships and goodwill, including securing specific major customers with whom Oros & Busch had never successfully conducted business. Although Clear Creek was not itself a viable entity, Oros & Busch was interested in Golden's and Timby's customer relationships in the southwestern Missouri and

northern Arkansas region. These relationships motivated Oros & Busch to acquire the assets of Clear Creek, and to rescue Golden and Timby from the $399,000 debt. To achieve its aim, Oros & Busch, on January 6, 2011, entered into an Asset Purchase Agreement (the "APA"), whereby Oros & Busch acquired all of Clear Creek's assets, with Golden, Timby, and an individual named Jason Ramsey. In consideration for the purchase of Clear Creek's assets and the assumption of Clear Creek's debt, Golden and Timby promised in the APA not to compete against Oros & Busch for ten (10) years. Since it acquired Clear Creek, Oros & Busch has been paying approximately $6,000 per month in principal and interest on the balance of the two Clear Creek loans. Oros & Busch has paid one of Clear Creek's two outstanding loans in full. In addition to the non-compete obligations, Golden and Timby agreed to a confidentiality agreement in the APA, in which they promised to keep confidential "all information about Buyer" obtained as a result of the APA's terms.

Oros & Busch's primary purpose for acquiring Clear Creek, and assuming the debt, was to hire Golden and Timby, thereby capitalizing on their goodwill and customer relationships. Specifically, Oros & Busch hoped to compete with Terra, Oros & Busch's largest competitor, for business in the southwestern Missouri and northern Arkansas region. Oros & Busch had never successfully secured business in that region. Golden's and Timby's existing customer relationships in that region made them particularly well-suited to assist Oros & Busch in this endeavor. Accordingly, Oros & Busch employed Golden and Timby as its "point-persons" in southwestern Missouri and Arkansas. Golden served as regional general manager, and Timby served as regional environmental compliance manager.

To support Golden's and Timby's efforts to develop new business, Oros & Busch invested approximately $1,000,000 (taking into account the debt acquired from Clear Creek) in

3

the region, and acquired certain equipment, purchased specifically for Golden's and Timby's operations, that gave Oros & Busch a competitive advantage over its competitors in the region, especially Terra. This unique equipment was not known to Terra, or to Oros & Busch's other competitors in the industry. Golden and Timby gained knowledge of this equipment, and its source, while employed by Oros & Busch.

As promised, Golden and Timby utilized their customer relationships to help Oros & Busch successfully secure new business in southwestern Missouri, northern Arkansas, Kentucky, and Tennessee regions for the first time, including new customers secured solely through Golden's and Timby's prior customer relationships. In 2012, these new customers accounted for over 42% of Oros & Busch's annual revenue.

As a result of the acquisition of Clear Creek's assets, including Golden's and Timby's customer relationships and goodwill, Oros & Busch posed a significant economic threat to Terra. Through Oros & Busch's, Golden's, and Timby's combined efforts, Oros & Busch was establishing itself as a viable competitor in the southwestern Missouri and northern Arkansas region.

However, on April 23, 2012, Oros & Busch received identical letters from Golden and Timby, informing it the two men were voluntarily resigning their employment and terminating their employment agreements. On April 25, 2012, Oros & Busch learned that Golden and Timby were going back to work for Terra, Oros & Busch's largest competitor. Golden and Timby resigned from Oros & Busch with the express purpose of aiding Terra in competing unfairly against Oros & Busch, in exchange for substantially more compensation than they previously received from Terra, Oros & Busch, or Clear Creek. In fact, Terra solicited Golden and Timby for employment, and offered them substantial pay increases while Golden and Timby were

employed by Oros & Busch, and were subject to covenants not to compete under the APA. Terra was aware of the non-compete obligations at that time. Terra solicited Golden and Timby for the express purposes of unfairly competing to gain back the customers it had lost to Oros & Busch, and eliminating Oros & Busch's ability to pose a significant competitive threat in the future.

Terra filed its Answer to the Amended Complaint on December 11, 2013 [ECF No. 146]. In its Answer, Terra asserted three Counterclaims against Oros & Busch: 1) Tortious Interference with Business Expectancy/Interference with Economic Advantage; 2) Misappropriation of Trade Secrets; and 3) Conversion. Among other things, these claims allege Oros & Busch knowingly and intentionally used, or had Golden or Timby use on its behalf, confidential information Golden acquired during his Terra employment between 2007 and July of 2009. On January 2, 2014, Oros & Busch filed its Motion to Strike, pursuant to Federal Rule of Civil Procedure 12(f), asking the Court to strike paragraphs 31-34 of Terra's counterclaim, as redundant, impertinent, immaterial and scandalous material having no bearing on Terra's claims [ECF No. 152].

The Court conducted a Motion Hearing on February 24, 2014, during which counsel for both parties presented arguments [ECF No. 161].

## II.    LEGAL STANDARD

### A.    Motion for Sanctions

When presented with conduct that abuses the judicial process, a district court's inherent power includes the discretionary ability to impose an appropriate sanction. *Sherman v. Rinchem Co., Inc.*, 687 F.3d 996, 1006 (8th Cir. 2012). However, to warrant dismissal or the giving of an adverse inference instruction, as sanction for spoliation of evidence, there must be a finding of intentional destruction indicating a desire to suppress the truth. *Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002, 1006 (8th Cir. 2006). Furthermore, a court must find the destruction

prejudiced the party alleging harm, before a sanction for destruction of evidence is appropriate. *Dillon v. Nissan Motor Co., Ltd.*, 986 F.2d 263, 267 (8th Cir. 1993).

B. **Motion to Strike**

Rule 12(f) of the Federal Rules of Civil Procedure provides that courts "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although district courts enjoy liberal discretion under the rule, striking a party's pleadings is an extreme measure, and motions to strike are viewed with disfavor and are infrequently granted. *Stanbury Law Firm, P.A. v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000).

III. **DISCUSSION**

A. **Motion for Sanctions for Spoliation of Evidence**

During his tenure with Oros & Busch, Golden utilized three electronic devices: a laptop he used while working for Terra, Clear Creek, and Oros & Busch; a computer Oros & Busch bought for his use during his employment with it; and an external hard drive Golden used to back up the laptop and Oros & Busch computers. The Oros & Busch computer still exists; thus, Terra's motion concerns only two of the devices: 1) the laptop Golden used while working for Terra, Clear Creek, and Oros & Busch; and 2) the hard drive Golden used to back up the laptop and Oros & Busch computers.

In its Motion, Terra moves the Court for an order sanctioning Oros & Busch for deliberate and intentional spoliation of evidence. Terra alleges that Oros & Busch executed an agreement with Golden and Timby on July 16, 2013, and that the agreement expressly and unequivocally required the destruction of Golden's and Timby's computers, hard drives, and other electronic devices. Terra further alleges, prior to the execution of this agreement, Terra put

6

Oros & Busch on notice that Terra intended to assert claims against Oros & Busch for using Golden and Timby to misappropriate Terra's confidential information.

Terra asserts the destroyed electronically stored information ("ESI") included emails and other documents directly relevant to this case, including documents showing Oros & Busch misappropriated and knowingly used Terra's confidential information to compete against Terra. Terra claims a meaningful amount of the destroyed information does not exist from any other source, and contends, as a result, Terra has been materially prejudiced in its ability to defend against Oros & Busch's claims and to assert counterclaims against Oros & Busch. Terra asks the Court to dismiss Oros & Busch's claims against Terra as a sanction, or alternatively, to provide an adverse instruction against Oros & Busch for intentional spoliation of evidence. Terra also requests its attorneys' fees related to its motion for sanctions.

In its Memorandum in Opposition to Terra's Motion, Oros & Busch contends the Motion is frivolous, and should be denied; and Oros & Busch asks for attorneys' fees incurred in responding to the motion. Oros & Busch claims Golden's testimony is unreliable and biased, his affidavit is inconsistent with prior sworn testimony, and he admitted during the preliminary injunction hearing in this case that he had made false statements to Terra. Oros & Busch contends it did not destroy evidence, and did not have a duty or the ability to preserve the devices, as the destroyed devices were solely possessed, controlled, in the custody of, and owned by Terra's employees and agents, Golden and Timby. Oros & Busch further contends Terra had notice of the alleged evidence that was destroyed and failed to act to preserve it, claiming Terra was present at the mediation that led to the settlement agreement, and Oros & Busch notified Terra in writing as soon as it learned during discovery that Terra's confidential documents were among Golden's and Timby's production. Oros & Busch also claims Terra has not suffered

prejudice, stating among other things, that the evidence of any wrongdoing by Oros & Busch would exist in a number of places other than the destroyed devices, and noting Golden testified his hard drive was merely a copy of documents that had already been produced. Oros & Busch further states the documents still exist and have already been provided to Terra.

In its Reply, Terra asserts Oros & Busch does not dispute entering into an agreement requiring Golden and Timby to destroy their computers and hard drives. Terra further asserts Oros & Busch does not dispute moving to add Terra as a party prior to the agreement, or dispute Golden's & Timby's ESI was destroyed as a result of the agreement. Terra contends, under these three undisputed facts, established Eighth Circuit precedent warrants the imposition of an adverse inference instruction without a finding of explicit bad faith, because Oros & Busch's conduct was clearly intentional. Terra further argues that it is undisputed Oros & Busch affirmatively directed the destruction to occur, and thus should be sanctioned for directing a third party to destroy the evidence. Terra claims it left the mediation early, and was not present when the settlement agreement's destruction term was reached, and says it took appropriate steps to preserve Golden's and Timby's ESI. Terra also claims Golden's testimony shows that relevant evidence was permanently destroyed and cannot be obtained from another source. Terra contends it will be materially prejudiced if an adverse inference instruction is not given, because it has lost evidence it would have used to prove that: 1) any information Oros & Busch claims Terra improperly obtained was actually Terra's information in the first place; and 2) Oros & Busch used Terra's confidential information contained on Golden's laptop and hard drive to compete against Terra.

In cases involving spoliation of evidence allegations, there must be a finding of intentional destruction indicating a desire to suppress the truth, and a finding of prejudice

alleging harm, to warrant dismissal, or the giving of an adverse inference instruction, as a sanction. *Hallmark Cards, Inc. v. Murley*, 703 F.3d 456, 460 (8th Cir. 2013).

Terra argues Golden's destroyed ESI included highly relevant information Terra could use to disprove Oros & Busch's claims, and to prove Oros & Busch appropriated confidential information belonging to Terra, and Terra claims it is materially prejudiced because a "meaningful amount of the destroyed ESI does not exist from any other source" [ECF No. 129 at 2]. The parties presented extensive arguments during the hearing on the Motion for Sanctions. Additionally, the record before the Court contains substantial evidence of the conduct of various individuals and entities in this matter. During the hearing, Oros & Busch represented that Golden and Timby, not Oros & Busch, requested the settlement term calling for destruction of the ESI, and it claimed Oros & Busch agreed to the term because it assumed the relevant information contained on the devices already had been produced by the men, and was under the impression Golden's laptop long had been non-functional. Terra argued the identity of the party suggesting destruction was irrelevant, because Oros & Busch agreed to the term when it executed the settlement agreement. Terra contended, throughout the hearing, that its Motion for Sanctions was solidly supported by undisputed evidence. As an initial observation, the evidence upon which Terra's motion, and, in particular, its claim of prejudice, primarily rest, are statements made by Golden in an affidavit, that are inconsistent with Golden's testimony at a May 24, 2013 deposition; consequently, the probative sufficiency of this evidence is questionable [ECF Nos. 130-1 at 2-7, 139].

In his affidavit, Golden asserts the destroyed ESI contained, among other things, Clear Creek business records, Oros & Busch business records, Terra business records, and some emails he sent or received during his employment with Terra between 2007 and July 2009 [ECF

No. 130-1]. Golden claims, if he had this ESI, he would be able to identify documents showing he utilized information, goodwill, and relationships he developed during his tenure at Terra, for Oros & Busch's benefit. He states, "With very rare exception, the only places I stored and maintained the information referenced in [the affidavit] were the electronic equipment and/or data storage devices that were destroyed per the settlement agreement" [ECF No. 130-1 at 5]. Golden further states, "To the best of my knowledge and recollection, there was a meaningful amount of information contained in my Electronically Stored Information that does not exist anywhere else, and that cannot be obtained from another source" [ECF No. 130-1 at 5].

At his May 24, 2013 deposition, Golden testified about documents produced to Oros & Busch. He also testified about documents contained in the computer bought for his use while he was employed at Oros & Busch. Golden explained he saved the produced documents to an external hard drive [ECF No. 139]. According to his deposition testimony, in response to a production request, Golden gave Oros & Busch documents that came from his Oros & Busch.com email account. When asked about his ability to access that email account and whether he undertook some exercise to keep emails and documents, Golden testified that the documents had been stored on his external hard drive, which had performed routine automatic backups of his Oros & Busch laptop [ECF No. 139 at 2-3]. Golden further stated he kept the hard drive when he left his employment with Oros & Busch. Golden said he believed the hard drive had Oros & Busch business information on it, indicated he could not recall if it had Oros & Busch customer information on it, and conceded it possibly had Oros & Busch pricing information on it. He testified he could not recall everything the hard drive contained [ECF No. 139 at 3].

When asked if he had given his lawyers documents from a source other than the external hard drive, Golden said he could not recall. He then testified the exact same files on the external hard drive were on the computer he turned over to Oros & Busch [ECF No. 139 at 4-5]. Among other things, this prior testimony appears to contradict Golden's affidavit statements that the only places he stored and maintained the three entities' business information were the destroyed electronic items, and that the ESI did not "exist anywhere else, and . . . cannot be obtained from another source." By filing an inconsistent affidavit, Golden created issues regarding his storage of electronic files, and concerning his credibility. *See Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365-66 (8th Cir. 1983) (parties should not be permitted to create credibility issues by contradicting their own earlier testimony). The Court additionally notes Golden's affidavit and testimony describe conduct on his behalf, such as knowingly copying, using, or retaining confidential information belonging to former employers, that does not contribute favorably to his credibility. Furthermore, the record suggests Golden might be motivated to assist Terra, and portray Oros & Busch in a negative light. The record includes correspondence between Golden and Terra, in which Golden asserts he "can bring back the customers you all have lost to [Oros & Busch] as well as new customers and make you all look like the good guys at the end of the day" [ECF No. 140 at 1].

Nevertheless, irrespective of the probative sufficiency of Golden's affidavit, the Court finds the record does not support a finding of intentional destruction by Oros & Busch indicating a desire to suppress the truth. In fact, the record contains evidence indicating that Oros & Busch alerted Terra to Golden's possession of confidential Terra information obtained during his prior tenure with Terra, and the need to preserve such ESI.

In March 2013, Terra asked Oros & Busch to inform it of any Terra documents that may have been produced by Golden or Timby in response to Oros & Busch's Request for Production, stating it had not had the opportunity to review the mens' submitted documents prior to their production [ECF NO. 137-4 at 2]. On March 27, 2013, Oros & Busch contacted Terra, after review of documents produced to Oros & Busch by Golden and Timby, to confirm the production included confidential Terra documents and information, and suggested Terra obtain its documents and information directly from Golden and Timby, because the documents were subject to a protective order [ECF No. 137-4 at 1]. Oros & Busch identified the documents by their Bates number and indicated their content matter.

The record evidence further reveals Oros & Busch contacted Terra on March 29, 2013, informing Terra that it had reviewed a thumb drive received from Terra, and would like to obtain four identified documents contained on the drive [ECF No. 137-5]. In this email message, Oros & Busch also told Terra that it was "of the opinion that Golden and Timby violated Paragraph 8 of [Terra's Code of Business Conduct and Ethics] by wrongfully possessing Terra documents while employed by Oros & Busch and attempting to use those documents competitively against Terra." On April 2, 2013, Oros & Busch again emailed Terra, to ascertain whether Terra would participate in a mediation scheduled on April 22nd, and whether Terra had been able to obtain the documents identified as Terra's in Oros & Busch's March 27, 2013 email, from Golden and Timby [ECF No. 137-6]. Oros & Busch informed Terra on April 16, 2013, that Golden and Timby had produced additional documents revealing April 2012 email correspondence between them and Terra employees [ECF No. 137-8 at 3]. In this email message, Oros & Busch also requested a status update on Terra's document production. In response, Terra explained it was going through thousands of pages of documents, asked for a description of the emails' content,

12

and requested copies of them, if they were not subject to the protective order entered in the matter [ECF NO. 137-8 at 3].

Oros & Busch emailed Terra on April 25, 2013, trying to obtain an update on Terra's document production [ECF No. 137-8 at2]. Terra replied on April 26, indicating some of the documents would be ready that day [ECF No. 137-8 at 2]. In its reply, Terra stated it did not know the status of the mediation or a consent injunction, and informed Oros & Busch that Tom Jones, Golden's supervisor, would represent Terra at the mediation, once it was scheduled. When Oros & Busch responded on April 29, it asked: "Did Terra ever obtain their confidential documents from [Golden and Timby] as we strongly suggested?" [ECF NO. 137-8 at 1]. In an April 29, 2013 email, Terra's counsel stated: "I have advised the client about the confidential documents. Terra advised they would speak with Golden and Timby about the documents and I should take no action at present." [ECF NO. 137-8 at 1].

In a June 27, 2013 email to Terra, Golden, and Timby, Oros & Busch indicated its belief that, although Terra was not yet a party to the lawsuit, Terra's attendance at a mediation, scheduled for July 15, 2013, would be in the best interest of all the parties [ECF No. 130-14 at 10]. Oros & Busch asked if Terra was willing to attend the mediation, and whether its representative would be able to do so on July 15. As stated above, Terra did attend the mediation, but left prior to settlement. Terra's counsel recalls: 1) he was informed by the court-appointed Neutral and others that Oros & Busch, Golden, and Timby reached a settlement at approximately 3:15 a.m. on July 16; 2) he received a copy of the settlement terms around 2:45 p.m. on July 16; and 3) the ESI was destroyed by the afternoon of July 17, 2013. [ECF No, 150-1]. The record does not show conduct by Oros & Busch to destroy or conceal evidence in an effort to suppress the truth, such that sanction would be warranted. Oros & Busch afforded Terra

13

the opportunity to participate in the mediation; had Terra not left early, it would have learned of the clause requiring destruction of the ESI before Golden and Timby turned it over to the Neutral, and could have voiced a timely objection. The record reveals Oros & Busch demanded Terra preserve ESI; alerted Terra regarding Golden's and Timby's production of confidential Terra information; recommended Terra obtain its confidential documents and information directly from the men; and told Terra it believed the men wrongfully possessed, and attempted to use competitively against Terra, documents acquired during their Terra employment.

Furthermore, the record does not support the requisite finding of prejudice to Terra that must be made before dismissal or an adverse inference instruction is warranted. *See Hallmark Cards, Inc.*, 703 F.3d at 460. As previously stated, Terra's claim that it has been materially prejudiced in its ability to defend itself and to assert counterclaims in this matter is primarily based on Golden's representations in his affidavit, which this Court finds to be inconsistent and lacking in credibility. Moreover, the record already contains documents showing Golden utilized information, goodwill and relationships he developed while at Terra for Oros & Busch's benefit, which indicates the information can be obtained from another source. The Court also finds Terra's claim of prejudice is further weakened by its inaction after being alerted to the production of its confidential information by Oros & Busch, as such conduct would indicate Terra did not regard the documents as necessary to a successful defense against, or prosecution of, any claims in this matter, as it now professes. The Court notes Golden obtained the Terra documents during his employment with that company between 2007 and 2009, and apparently utilized them during his time with Clear Creek between 2009 and 2011. Hence, much of the information contained in them likely would have been stale by the time Golden joined Oros & Busch in 2011, which could explain Terra's initial inaction. Upon the record presently before it, the Court will deny Terra's

Motion for Sanctions; however, the denial will be with leave to re-file at a later time. The Court finds an award of attorney's fees to either party is not warranted at this time.

B. **Motion to Strike**

Oros & Busch has filed a Motion to Strike [ECF No. 152]. In its Motion, Oros & Busch moves to strike, pursuant to Federal Rule of Civil Procedure 12(f), paragraphs 31-34 of Terra's counterclaim, which contain allegations concerning the destruction of the ESI. Oros & Busch contends these paragraphs are fraught with redundant, impertinent, immaterial and scandalous material having no bearing on Terra's claims under any analysis. Paragraphs 31 through 34 of Terra's pleading state as follows.

> 31. In July of 2013, Oros & Busch settled its lawsuit against Golden and Timby through a written settlement agreement. Pursuant to Paragraph 5 of the settlement agreement, Golden and Timby were required to destroy their laptop and other electronic storage devices which contained information regarding their employment with Terra, Clear Creek and Oros & Busch ("Electronically Stored Information"). In particular, Paragraph 5 of the settlement agreement states:
>
>> 5. Destruction of Defendants' Electronic Equipment.
>>
>> a. Golden affirms, represents and warrants that he, by and through his counsel, submitted to the mediator in this case, Michael Geigerman, for destruction the following electronic equipment and/or data storage devices that he owned and/or controlled: one (1) external hard drive, one (1) personal laptop, one (1) flash-drive, and one (1) CD/Media Disc. To the best of Golden's knowledge and belief, said equipment was recycled and otherwise destroyed by EPC, Inc., as certified by the Certificates of Destruction, attached hereto as Exhibit C.
>>
>> b. Timby, affirms, represents and warrants that he, by and through his counsel, submitted to the mediator in this case, Michael Geigerman, for destruction the following electronic equipment and/or data storage devices that he owned and/or controlled: one (1) personal laptop, one (1) flash-drive, and one (1) CD/Media Disc. However, the Parties agreed that Timby, under the supervision of Robert Litz (of USA&M), could remove personal information/materials from his personal laptop before such destruction, which Timby so removed on July 16, 2013, under Mr. Litz's supervision. To the best of Timby's knowledge and belief, the aforesaid equipment was recycled

15

and otherwise destroyed by EPC, Inc., as certified by the Certificates of Destruction, attached hereto as Exhibit C.

32. Pursuant to Paragraph 5 of the settlement agreement, on July 17, 2013, Golden submitted a hard drive, laptop and flash drive containing his Electronically Stored Information to Mr. Geigerman for destruction. As reflected by the certificate attached as Exhibit C to the settlement agreement, Golden's Electronically Stored Information was destroyed that day. Indeed, the certificate expressly states that "all materials [were] shredded, with no parts or items recoverable."

33. By entering into a written agreement with Golden to destroy his Electronically Stored Information, Oros & Busch has engaged in the improper and unlawful tampering and spoliation of evidence. Indeed, there was information relevant to this lawsuit contained in Golden's Electronically Stored Information that does not exist anywhere else, and that cannot be obtained from another source.

34. Because of Oros & Busch's agreement to tamper with and destroy Golden's Electronically Stored Information, Terra is materially prejudiced in its ability to pursue this counterclaim, and defend against Oros & Busch's claims. As just a few examples:

> a. If Golden's Electronically Stored Information was not destroyed, Golden would be able to identify some, if not all, of Terra's Confidential Information that was forwarded to Mr. Busch to be improperly used to compete against Terra.
>
> b. If Golden's Electronically Stored Information was not destroyed, Golden would be able to identify the Terra Confidential Information that he used to create bids, proposals and other documents for Oros & Busch.
>
> c. If Golden's Electronically Stored Information was not destroyed, Golden would be able to identify documents showing that many of the customers he solicited and serviced at Oros & Busch were customers that he gained knowledge of and developed a relationship with at Terra.

In its Response to Oros & Busch's Motion to Strike, Terra argues that Oros & Busch has not, and cannot, meet its burden of proving the four paragraphs regarding spoliation clearly have no possible bearing on the subject matter of the litigation [ECF No. 156]. Terra contends Oros & Busch makes no effort to explain how its agreement to destroy evidence directly relating to

Terra's claims and defenses is immaterial to this case, and Terra argues Oros & Busch's intentional and deliberate entry into an agreement requiring the two key witnesses to destroy their ESI has a bearing on the action's subject matter. Terra further argues Oros & Busch has failed to make an attempt to demonstrate the paragraphs have, or will, cause it prejudice, and claims such failure necessitates the denial of the motion to strike.

Courts enjoy broad discretion, under Rule 12(f), to strike from pleadings insufficient defenses, or any redundant, immaterial or scandalous matter. *Stanbury Law Firm*, 221 F.3d at 1063. However, striking a party's pleadings is an extreme measure. *Id.* Consequently, Rule 12(f) motions to strike are viewed with disfavor, and are granted infrequently. *Id.* In ruling on a motion to strike, courts view the pleadings in the light most favorably to the pleader. *Speraneo v. Zeus Tech., Inc.*, 2012 WL 2117872 at *1 (E.D. Mo. June 11, 2012). The Court finds the counterclaims are not wholly foreign to the issue presented in this case, are not needlessly repetitive of immaterial allegations, and do not lack essential or important relationships to the matter at hand. In other contexts, such as a motion for summary judgment, the sufficiency of Terra's counterclaims can be more thoroughly tested; nevertheless, at this juncture, it cannot be said that Terra's counterclaims could not succeed under any circumstances, nor that the claims are immaterial or non-essential to the action. The Court will deny Plaintiff's Motion to Strike.

## III. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Sanctions for Spoliation of Evidence [ECF No. 129] is **DENIED, with leave to re-file at later date.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike [ECF No. 152] is

**DENIED**.

Dated this   6th   day of March, 2014.

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　E. RICHARD WEBBER
　　　　　　　　　　　　　　　　　　　　SENIOR UNITED STATES DISTRICT JUDGE